# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MEGATEL HOMES, LLC, and ZACH IPOUR,** | § § § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | **CIVIL ACTION NO. 3:22-CV-1715** |
| **CRYSTAL LAGOONS U.S. CORP.,** | § § § | |
| *Defendant.* | § | |

### CRYSTAL LAGOONS U.S. CORP.'S ORIGINAL ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Crystal Lagoons U.S. Corp. ("Crystal Lagoons") files its Original Answer and Counterclaims to Plaintiffs Megatel Homes, LLC's ("Megatel") and Zach Ipour's ("Ipour") First Amended Complaint (Dkt. 9), and respectfully shows the Court as follows:

## I.
## ANSWER

### Need for Action

1.      Crystal Lagoons denies the allegations in Paragraph 1 of the First Amended Complaint.

2.      Crystal Lagoons admits that Megatel and Crystal Lagoons discussed a potential arrangement whereby Megatel would license from Crystal Lagoons certain technology related to the design and operation of lagoons and that discussions between Megatel and Crystal Lagoons began in July 2020. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 2 of the First Amended Complaint and therefore denies the same.

3.      Crystal Lagoons admits that it filed a petition in Texas state court in Dallas County under Rule 202 of the Texas Rules of Civil Procedure, seeking pre-suit discovery against Megatel, Ipour, and Darrell Grooms to investigate a potential claim or suit, which the Texas state court granted. Crystal Lagoons denies that it filed its Rule 202 Petition because it was upset that it was unable to secure a licensing deal.

4.      Crystal Lagoons admits that its Intellectual Property Director, Javiera De la Cerda, submitted a declaration in the course of the Rule 202 proceedings and that the statements in the declaration speak for themselves. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 4 of the First Amended Complaint and therefore denies the same.

5.      Paragraph 5 of the First Amended Complain contains legal argument and a summary of the relief requested by Plaintiffs for which no response is required. To the extent any further response may be required, Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5 of the First Amended Complaint and therefore denies the same, including denying that Plaintiffs are entitled to the relief they seek.

**Parties, Jurisdiction, and Venue**

6.      Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 of the First Amended Complaint and therefore denies the same.

7.      Crystal Lagoons admits that it is a Delaware corporation and that its registered agent has been correctly identified.

8.      Paragraph 8 of the First Amended Complaint is a legal statement for which no response is required.

9.      Paragraph 9 of the First Amended Complaint is a legal statement for which no response is required.

10.      Paragraph 10 of the First Amended Complaint is a legal statement for which no response is required.

## Factual Allegations

11.      Crystal Lagoons believes the allegations in Paragraph 11 of the First Amended Complaint are accurate.

12.      Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 of the First Amended Complaint and therefore denies the same.

13.      Crystal Lagoons admits that, among other things, it licenses technology related to the design, construction, and operation of large man-made lagoons.

14.      Crystal Lagoons admits that, around July 2020, Megatel and Crystal Lagoons began discussing a potential license agreement. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 14 of the First Amended Complaint and therefore denies the same.

15.      Crystal Lagoons admits that Megatel and Crystal Lagoons entered into the Non-Disclosure Agreement attached as Exhibit A to the First Amended Complaint, which was signed by Ipour on behalf of Megatel on August 5, 2020, and by Eric Cherasia on behalf of Crystal Lagoons on August 6, 2020.

16.      Crystal Lagoons admits that, after entering into the NDA, Crystal Lagoons engaged in good-faith negotiations regarding a project that Megatel referred to as the Venetian and several other projects. Crystal Lagoons is without sufficient knowledge or information to form a belief as

to the truth of the remaining allegations in Paragraph 16 of the First Amended Complaint and therefore denies the same.

17.     Crystal Lagoons admits that, based on public information reviewed by Crystal Lagoons, Megatel has submitted information for various projects to governmental officials, and Megatel stated in certain documents that its projects would include a lagoon with Crystal Lagoons' technology. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 17 of the First Amended Complaint and therefore denies the same.

18.     Crystal Lagoons denies the allegations in the first sentence of Paragraph 18 of the First Amended Complaint. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 18 of the First Amended Complaint and therefore denies the same.

19.     Crystal Lagoons admits that Megatel stopped responding to Crystal Lagoons before a deal was reached between the parties. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 19 of the First Amended Complaint and therefore denies the same.

20.     Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20 of the First Amended Complaint and therefore denies the same.

21.     Crystal Lagoons admits the allegations in Paragraph 21 of the First Amended Complaint as to the filing of the Rule 202 Petition. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 21 of the First Amended Complaint and therefore denies the same.

22.     Paragraph 22 of the First Amended Complaint is a legal statement for which no response is required.

23.     Crystal Lagoons admits the allegations in Paragraph 23 of the First Amended Complaint.

24.     Crystal Lagoons admits that the content of Ms. De la Cerda's Declaration speaks for itself and no further response to the allegations in Paragraph 24 of the First Amended Complaint is required.

25.     Crystal Lagoons admits that the statements in Ms. De la Cerda's Declaration submitted in the course of the Rule 202 proceeding speak for themselves and no further response to the allegations in Paragraph 25 of the First Amended Complaint is required.

26.     Crystal Lagoons denies that Ms. De la Cerda made "accusations" and denies that Megatel fully complied with the NDA. Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 26 of the First Amended Complaint and therefore denies the same.

27.     Paragraph 27 of the First Amended Complaint is a legal statement for which no response is required. To the extent any further response may be required, Crystal Lagoons is without sufficient knowledge or information to form a belief as to the truth of such allegations and therefore denies the same.

### Cause of Action

28.     Crystal Lagoons reasserts and incorporates herein by reference its responses to the foregoing paragraphs.

29.     Paragraph 29 of the First Amended Complaint is a legal statement for which no response is required. To the extent any further response may be required, Crystal Lagoons is

without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29 of the First Amended Complaint and therefore denies the same.

30.     Paragraph 30 of the First Amended Complaint is a legal statement for which no response is required. To the extent any further response may be required, Crystal Lagoons denies that Plaintiffs are entitled to any of the relief sought in Paragraph 30 of the First Amended Complaint and therefore denies the same.

31.     Crystal Lagoons denies that Plaintiffs are entitled to any of the relief sought in Paragraph 31 of the First Amended Complaint.

To the extent not expressly admitted above, Crystal Lagoons denies all other allegations in the First Amended Complaint, including all of the requested relief.

## II.
## COUNTERCLAIMS

### Introduction

1.     Crystal Lagoons has developed and patented an innovative, one-of-a-kind technology that allows for building and maintaining large, man-made lagoons with turquoise-clear, high-quality water at low costs—a technology that is enhancing the lifestyle of people around the globe. Crystal Lagoons' amenities make "beach life"—including watersports like kayaking, sailing, rowing, and windsurfing—accessible in myriad locations. With 2,500+ patents in 190 countries, Crystal Lagoons' technology is in high demand, with more than 1,000 projects in the negotiation and planning stages around the world.

2.     Megatel is a Dallas-based homebuilder and developer. In or around July 2020, Megatel's President, Zach Ipour, contacted Crystal Lagoons to inquire about potentially incorporating a multi-acre, man-made water body using Crystal Lagoons' technology (i.e., Crystal Lagoons' proprietary amenity) into one of Megatel's developments in the greater Dallas area.

Megatel and Crystal Lagoons then signed a non-disclosure agreement ("NDA") to evaluate the potential execution of a license agreement between the parties. The NDA prohibits either party from using any "Confidential Information"—which is broadly defined to include any "material related to the dealings between the parties" and "products of [Crystal Lagoons]"—for any other purpose. The NDA also specifically prohibits the use of Crystal Lagoons' name or trademarks without Crystal Lagoons' authorization.

3.     Crystal Lagoons shared Confidential Information with Megatel under the NDA, including, among other non-public information and documents, a basic guide for planning a Crystal Lagoons man-made lagoon and a business plan with investment and revenue estimations and extensive considerations for developing and operating a lagoon. This litigation arises from Megatel's ensuing misuse of the Confidential Information and efforts to free ride off Crystal Lagoons' good name and valuable intellectual property.

4.     After executing the NDA and receiving Confidential Information from Crystal Lagoons, Ipour abruptly cut off negotiations between Megatel and Crystal Lagoons. But that did not stop Ipour and other Megatel representatives from proceeding to use Crystal Lagoons' name, trademarks, and images of Crystal Lagoons' amenities to seek and secure governmental approval for Megatel developments. These actions were taken without Crystal Lagoons' involvement or approval and suggested to city officials and members of the public that Megatel and Crystal Lagoons were working together to bring Crystal Lagoons' technology to communities across Texas. On the contrary, however, Megatel was apparently working with other aquatic engineers to plan amenities that would mimic Crystal Lagoons' proprietary technology. On information and belief, the amenities that Megatel has planned and advertised for its real-estate developments would not be possible without Megatel and Ipour mishandling Crystal Lagoons' Confidential

Information and improperly using Crystal Lagoons' name and trademark.

5.      As described below, Megatel has breached the NDA and violated Texas unfair competition law, causing damages to Crystal Lagoons for which Crystal Lagoons seeks to recover.

## Parties, Jurisdiction, and Venue

6.      Crystal Lagoons is a Delaware corporation.

7.      Megatel has alleged that it is a Texas limited liability company with its principal place of business at 2102 Cedar Springs Road, Suite 700, Dallas, Texas 75201 and that it has two members who are both individual citizens and residents of Texas. Megatel has appeared in this action and may be served through its counsel of record.

8.      Ipour has alleged that he is president of Megatel and an individual citizen and resident of Texas. Ipour has appeared in this action and may be served through his counsel of record.

9.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

10.     The Court has personal jurisdiction over Megatel and Ipour because they have voluntarily appeared in this matter.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district. Plaintiffs/Counter-Defendants also reside within the district of the United States District Court for the Northern District of Texas.

## Background

### A.   Crystal Lagoons' amenities are distinct, highly valuable real-estate features.

12.     Crystal Lagoons has developed and patented an innovative technology that allows for building and maintaining large man-made lagoons with turquoise-clear, high-quality water at low costs. Because of these innovations, Crystal Lagoons has received numerous awards and holds

two records in the Guinness Book of Records. Crystal Lagoons is responsible for more than 70 projects already in operation or construction, and its technology is in high demand, with more than 1,000 other projects in the negotiation or planning stages around the world.

13.     The Crystal Lagoons technology was developed by real-estate developer and biochemist Fernando Fischmann. While planning a real-estate development on Chile's central coast, called San Alfonso del Mar, Mr. Fischmann envisioned creating an enormous, 20-acre lagoon with high transparency turquoise waters that could provide a safe way to swim and enjoy watersports in a clean and family-friendly environment.

14.     When Mr. Fischmann sought out a company to turn his vision into a reality, he learned that existing technology, which is used in conventional swimming pools, was not viable to create large bodies of water with excellent water quality. Mr. Fischmann's vision for a 20-acre lagoon would be equivalent to 6,000 residential swimming pools, meaning it would require a massive concrete shell, more than 2,000 inlets, 6,000 doses of chlorine, and 6,000 filters to operate. Such a project would be neither technologically nor economically viable.

15.     Undeterred, Mr. Fischmann started researching. Seven years and countless man-hours later, he developed technology that allows for building a relatively low-cost structure containing huge bodies of water for recreational purposes while using up to 100 times less chemicals and 50 times less electricity than conventional swimming-pool technology. This technology also achieves high transparency and excellent physicochemical and sanitary water quality. These innovations are among many technologies Mr. Fischmann has invented, including systems and methods for water treatment, bottom cleaning, efficient filtration systems, business methods, localized disinfection systems, construction methods, and hydraulic systems and techniques, among others. Mr. Fischmann has a 2,500+ patent portfolio worldwide, and Crystal

Lagoons has several copyrighted conceptual designs and plans.

16.     For his innovations, Mr. Fischmann has been honored as recipient of, among other awards, Ernst & Young's "Entrepreneur of the Year," "Innovator of the Year," and "Businessman of the Year"; the Stevie Award in Italy (previously awarded to the likes of Steve Jobs and Jeff Bezos); and the "Real Innovator Award" by the London Business School. He has also been the keynote speaker at events organized by prestigious universities such as the Harvard Business School, MIT, Duke University, The London Business School, and the University of California, Berkeley, among others. Mr. Fischmann is also director of the German Institute for applied science Fraunhofer Institute FCR.

17.     On information and belief, all multi-acre, man-made lagoons used for swimming and water sports in the United States that have been successful in producing high-clarity waters have been built, operated, and/or maintained with Crystal Lagoons' technology. The following examples are representative of projects built and maintained using Crystal Lagoons' technology.

**Figure 1: Epperson Project, Florida (7 acres)**



**Figure 2: Lago Mar Project, Texas (12 acres)**



**Figure 3: Lago Mar Project, Texas (12 acres)**





Figure 4: Windsong Ranch Project, Texas (5 acres)



Figure 1: Windsong Ranch Project, Texas, 5 Acres



**Figure 2: Balmoral Project, Texas (2 acres)**



**Figure 3: SoleMia Project, Florida (7 Acres)**



18.     Crystal Lagoons' technology has allowed developers to create real estate projects

where residents have access to beach life near the doorsteps of their homes, enjoying man-made

crystalline lagoons far from the sea. Recently, Crystal Lagoons is bringing beach life to an urban setting through its concept of Public Access Lagoons® or PAL™ with ticketed access to the lagoon complex. Instead of driving long hours or flying to a beach destination, people in inland cities will be able to visit a beach setting through a PAL concept near their homes, including access to recreational, commercial, and cultural facilities and experiences, such as restaurants, water sports, and concerts, among other things. This PAL concept has gained so much momentum that to date more than 230 projects have been signed as part of Master Agreements around the world. In addition, Crystal Lagoons was awarded the Green Apple Award in 2021 in the sustainable category for its PAL concept, which helps reduce $CO^2$ footprint around the world.

19.     The following are links to videos of the Epperson Project, located in Florida, and the Lago Mar Project, located in Texas, which incorporate Crystal Lagoons' technology and the PAL concept, and which reflect significant aesthetic, technological, functional, economical, and environmental improvements compared to a conventional swimming pool: https://vimeo.com/445038143/5896695be3 (Epperson Project); https://vimeo.com/445038144/95ef018e89 (Lago Mar Project).

20.     To protect its pioneering technology, know-how, and confidential information, including trade secrets and processes, Crystal Lagoons has taken appropriate steps to guard its intellectual property and confidential information, including, among many other things, its business processes, systems, and methods.

**B.    Megatel approached Crystal Lagoons about incorporating Crystal Lagoons technology into a real-estate project, and Crystal Lagoons shared confidential information subject to an NDA.**

21.     In or around June 2020, Ipour approached Crystal Lagoons about a Megatel project in the Dallas area that would potentially include a lagoon using Crystal Lagoons' technology. Over

the next two months, Crystal Lagoons' representatives planned to meet with Ipour to discuss the possibility of working together on this project, which Megatel called the "Venetian."

22.    Importantly, before that meeting, Crystal Lagoons and Megatel signed the NDA on or about August 6, 2020, attached hereto as Exhibit 1, to "evaluate the potential execution of an agreement between the Parties." The NDA includes the following terms, among others:

a.    An acknowledgement that Crystal Lagoons developed and owns "know-how, systems, techniques and methods of construction" as well as "trademarks, business model, [and] look-and-feel . . . which allow one to design, build, operate and maintain artificial crystal clear water lagoons . . . ." (Ex. 1 ¶ i.)

b.    An acknowledgement that Crystal Lagoons developed a concept for a "Public Access Lagoon," which is "an innovative concept[] that expands the tropical turquoise lagoons beyond the private-accessed residential market . . . ." (*Id.* ¶ ii.)

c.    A prohibition on the misuse (including use for any other purpose than to "evaluate the potential execution of an agreement between the Parties") of "Confidential Information," which is broadly defined to include "all rendering, sketches, drawings, economic proposals, business model, data, know-how, formulae, processes, designs, documents, software, programs, photographs and other material related to the dealings between the parties . . . ." (*Id.* ¶¶ 1-2.)

d.    A provision clarifying that the NDA "neither grants a license nor transfers any patents, copyright, trademark, ideas, brand or other intellectual or industrial property right held by Crystal Lagoons," including "any and all developments, ideas, concepts, inventions, patents, copyrights, and any other type of intellectual/industrial property," as well as that Megatel "shall have no right to use

the Confidential Information of Crystal Lagoons except as expressly provided herein." (*Id.* ¶ 7.)

e.  A provision prohibiting either party from "us[ing] the other's name or trademark, unless authorized in writing." (*Id.* ¶ 8.)

23.     Pursuant and subject to the NDA, Crystal Lagoons shared Confidential Information with Megatel, including Crystal Lagoons' proprietary Basic Guide to Planning a Crystal Lagoons® Man-Made Lagoon (the "Proprietary Lagoon Guide") and non-public business plan considerations regarding investment and revenue and other factors for developing and operating a lagoon with Crystal Lagoons' technology and incorporating the PAL concept.

24.     Crystal Lagoons shared Confidential Information with Megatel in reliance on the NDA and with the goal of striking a deal for Megatel to develop a project with a lagoon using Crystal Lagoons' technology and/or to license Crystal Lagoons' technology for use in developments Megatel claimed would include an inland lagoon feature. Initially, the negotiations seemed promising. After Megatel had obtained Confidential Information from Crystal Lagoons, the parties' discussions about a single project grew into discussions about as many as 20 projects.

**C.  Negotiations between Crystal Lagoons and Megatel broke down before the parties could agree to terms of a license agreement.**

25.     As the parties continued working to define the scope of the relevant projects and the terms of a license agreement, Crystal Lagoons prepared an economic proposal for Megatel's "Venetian" project on or about September 3, 2020 (the "Economic Proposal"). The Economic Proposal contained non-public information about pricing and services offered by Crystal Lagoons.

26.     Unbeknownst to Crystal Lagoons at the time, but based on subsequent information and belief, Megatel and Ipour solicited and received a proposal from an aquatic engineer during the same period that Megatel and Ipour were negotiating with Crystal Lagoons.

27.     After receiving the proposal from the aquatic engineer, Ipour stated that if Crystal Lagoons would not meet his terms, then he would build a lagoon without Crystal Lagoons. Still unaware of the proposal that Megatel and Ipour obtained from the aquatic engineer, Crystal Lagoons remained engaged in the negotiations with Megatel and sent an initial version of a Memorandum of Understanding to Ipour on or about December 10, 2020. Ipour promptly acknowledged receipt and represented that he would follow up shortly.

28.     Meanwhile, on or about December 15, 2020, Megatel filed a federal trademark application seeking approval of a "Laguna Azure" word mark.

29.     Megatel then went silent and would not communicate with Crystal Lagoons. Crystal Lagoons' representatives came to Texas in early 2021 to visit clients, including a planned visit with Ipour. But ultimately, Ipour did not meet with Crystal Lagoons.

30.     Megatel and Ipour nevertheless continued moving forward with their plans to incorporate a lagoon amenity in real estate projects and, on information and belief, did so using Crystal Lagoons' Confidential Information and intellectual property. As Megatel and Ipour have gone down this path, on further information and belief, Megatel and Ipour now view Crystal Lagoons as a competitor in the market for lagoon amenities in Texas real estate projects.

31.     Megatel continues to advertise its planned lagoon communities on its website and in marketing materials.

**D.    Megatel disclosed Crystal Lagoons' Confidential Information in violation of the NDA.**

32.     Based on Megatel's and Ipour's actions, Crystal Lagoons filed a petition in Texas state court under Texas Rule of Civil Procedure 202, seeking to conduct discovery to investigate potential claims involving breach of the NDA and misuse of Crystal Lagoons' intellectual property. *See* No. DC-21-11538 in the 116th Judicial District Court of Dallas County, Texas.

33.     Megatel and Ipour resisted discovery into their actions and asserted that they had *their own* "trade secret" information about developing and operating a lagoon amenity that was immune from discovery by Crystal Lagoons. This was a remarkable argument because Megatel and Ipour have never developed or operated a lagoon amenity and, on information and belief, they lacked any knowledge about how to plan for, develop, or operate such an amenity before they entered into discussions with Crystal Lagoons and obtained Crystal Lagoons' Confidential Information. Even so, Megatel and Ipour alleged in the state court action that any discovery related to their anticipated development or operation of any lagoon amenities was improper and would allow others to unfairly compete with Megatel.

34.     The state court ultimately granted Crystal Lagoons' Rule 202 petition in part, and the ensuing discovery revealed that Ipour sent Crystal Lagoons' Proprietary Lagoon Guide— which is Confidential Information under the NDA—to third-party architects, designers, and consultants without Crystal Lagoons' knowledge, consent, or approval. A response from one of the third parties confirms the significance of this breach of the NDA by saying that the Proprietary Lagoon Guide contains "information that is helpful to design properly for Megatel projects" and would "definitely" be used "as a guideline" for designing Megatel's planned projects.

35.     On information and belief, Megatel and Ipour also shared Crystal Lagoons' Confidential Information with other third parties and with Megatel employees who had no role in the evaluation of the potential execution of an agreement between Crystal Lagoons and Megatel.

**E.     Megatel also used Crystal Lagoons' name and trademarks without authorization.**

36.     Without Crystal Lagoons' authorization, Ipour and other Megatel representatives presented Crystal Lagoons marketing materials and invoked Crystal Lagoons' name and trademarks during a meeting of the City Council of Anna, Texas, in August 2020.

37.     On or about August 20, 2020, Megatel and Ipour took officials from the City of Forney, Texas, to view the Epperson Project, which is the Crystal Lagoons' amenity near Tampa, Florida. On or about September 2, 2020, Megatel took officials from the City of Forney to view the Lago Mar Project, which is the Crystal Lagoons' amenity near Houston, Texas, and the Balmoral Project, which is another Crystal Lagoons' amenity located near Houston. On information and belief, these trips were taken on Megatel's private jet, and a purpose of the visits was to persuade the city officials to approve Megatel's development plans.

38.     Then, in connection with a September 2020 Forney City Council meeting (the "September FCC Meeting"), Darrell Grooms, a real-estate developer and consultant for Megatel, submitted or presented documents and related representations to the Forney City Council indicating a planned phase of construction for "MULTI-FAMILY, MIXED USE & CRYSTAL LAGOON" (capital letters in original). Megatel's submissions to the Forney City Council also included a Forney Lagoon Development Lagoon Program Level Site Plan with a diagram and associated legend identifying components of "the Public Lagoon Attraction"—much like Crystal Lagoons' Public Access Lagoon concept.

39.     Crystal Lagoons did not authorize these uses of its name and trademarks, and this misuse has prompted confusion regarding Crystal Lagoons' involvement in, support for, and/or sponsorship of the proposed Megatel development, referred to as the "Bellagio" project. For example, one person submitted a public comment "in support of the Bellagio neighborhood coming to Forney with Crystal Lagoon within the community." And minutes from the September FCC Meeting report discussion of zoning related to the "Bellagio project, which includes a 'crystal lagoon'" that would "be open to everyone and will be open year-round."

40.     Another example of Megatel using Crystal Lagoons' name without authorization includes a communication that former Megatel representative Matt Hood sent to a third party, stating that a particular site was likely unsuitable for a potential development because of "the need for more single family + multifamily density around a crystal lagoon and enough land to accommodate it." Mr. Hood also conducted a meeting with a representative of the City of Anna, Texas, on or about November 30, 2020, regarding "Crystal lagoon zoning."

41.     Shortly thereafter, on or about December 3, 2020, Darrell Grooms presented a video of the Epperson Crystal Lagoons® amenity and used the name "Crystal Lagoons" when seeking approval of the Bellagio project from the City of Forney's Planning and Zoning Committee.

42.     On March 4, 2021, after Megatel stopped engaging in discussions with Crystal Lagoons, a Megatel representative gave a presentation to the City of Forney's Planning and Zoning Commission for the Bellagio project and again used Crystal Lagoons' name.

43.     On information and belief, local governmental bodies' expressions of interest in and support for Megatel's real estate projects with planned lagoon amenities arose from the goodwill associated with Crystal Lagoons, and Megatel and Ipour benefitted from their reference to Crystal Lagoons' name and projects featuring its technologies, which caused confusion about Crystal Lagoons' involvement in, support for, and sponsorship of Megatel's developments.

44.     Megatel is currently marketing multiple "lagoon communities" under the names AnaCapri, Bellagio, Santorini, Sicily, SoHo Square, and Venetian, which are advertised to feature "lagoon life" with "white sand beaches, clear blue water, and activities galore for everyone to enjoy" and which incorporate public-access features mimicking the PAL concept that Crystal Lagoons developed and specifically addressed in the NDA. *See* https://www.megatelhomes.com/; Ex. 1 at ¶ ii.

45.     Neither Megatel nor Ipour have adequately corrected confusion about Crystal Lagoons' involvement in, support for, and/or sponsorship of these Megatel developments, as shown by an article dated as recently as May 2022, in which the author is under the impression Megatel is constructing a Crystal Lagoons amenity in Forney. *See* https://candysdirt.com/2022/05/29/lagoons-are-on-the-way-in-dallas-fort-worth-but-heres-whats-being-developed/.

46.     Megatel's and Ipour's actions are also generating confusion among and causing interference with Crystal Lagoons' existing and prospective clients.

### Counterclaims

**A.    Count I – Breach of Contract by Megatel.**

47.     Crystal Lagoons incorporates the foregoing allegations as though fully restated herein.

48.     The NDA constitutes a binding and enforceable contract between Crystal Lagoons and Megatel.

49.     Crystal Lagoons performed or tendered performance of all its obligations under the NDA, including by sharing its Confidential Information with Megatel.

50.     Megatel breached the NDA by, among other things, (i) disclosing Crystal Lagoons' Confidential Information without Crystal Lagoons' written consent to third parties and Megatel employees who did not need to know such information to carry out Megatel's business with Crystal Lagoons, (ii) using Crystal Lagoons' Confidential Information for purposes inconsistent with evaluation of the potential execution of an agreement between Crystal Lagoons and Megatel, and (iii) using Crystal Lagoons' name and trademarks without Crystal Lagoons' written authorization.

51.     Because of Megatel's breaches of the NDA, Crystal Lagoons has incurred damages in excess of $75,000 and in an amount to be determined at trial.

**B.    Count II – Common Law Misappropriation by Megatel and Ipour.**

52.    Crystal Lagoons incorporates the foregoing allegations as though fully restated herein.

53.    Crystal Lagoons devoted years of labor, skill, and money to establishing Crystal Lagoons' product, brand, and related trademarks.

54.    Megatel and Ipour view Crystal Lagoons as a competitor.

55.    Megatel and Ipour have misappropriated Crystal Lagoons' name, image, and trademarks for their own commercial use and monetary gain.

56.    Megatel's and Ipour's use of Crystal Lagoons' name and trademarks gave them a special competitive advantage because they were burdened with little or none of the expense that Crystal Lagoons incurred in creating and establishing its product, brand, and trademarks.

57.    Because of Megatel's and Ipour's use of Crystal Lagoons' name and trademarks, Crystal Lagoons has incurred damages in excess of $75,000 and in an amount to be determined at trial.

**Conditions Precedent**

58.    All conditions precedent to Crystal Lagoons' right to recovery for each counterclaim have been performed, occurred, or excused.

**<u>PRAYER</u>**

Crystal Lagoons respectfully requests that the Court enter judgment against Megatel Homes, LLC and Zach Ipour, individually, as follows:

1.    Deny and dismiss Plaintiffs' claim against Crystal Lagoons with prejudice;

2.    Award actual damages to Crystal Lagoons in an amount to be determined at trial;

3.    Award Crystal Lagoons pre-judgment interest and post-judgment interest on all actual damages at the highest lawful rates;

4.      Award Crystal Lagoons its costs and reasonable attorneys' fees; and

5.      Award all such other and further relief at law or equity to which Crystal Lagoons

may be entitled.


Dated: October 24, 2022                                      Respectfully submitted,


*/s/ Richard D. Anigian*
Richard D. Anigian
    Texas Bar No. 01264700
    *richard.anigian@haynesboone.com*
Jason N. Jordan
    Texas Bar No. 24078760
    *jason.jordan@haynesboone.com*
J. Wilson Miller
    Texas Bar No. 24125326
    *wilson.miller@haynesboone.com*
HAYNES BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: 214-651-5000
Fax: 214-651-5940

**ATTORNEYS FOR DEFENDANT**
**CRYSTAL LAGOONS U.S. CORP.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant hereby certifies that on October 24, 2022, a true and correct copy of the above and foregoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Richard D. Anigian*
Richard D. Anigian