UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEGATEL HOMES, LLC, and ZACH IPOUR, | § § § § | |
| *Plaintiffs / Counter-defendants*, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-1715-X |
| CRYSTAL LAGOONS U.S. CORP., | § § § | |
| *Defendant / Counter-plaintiff.* | § | |

**Crystal Lagoons' Response to Plaintiffs' Motion to Dismiss Count II of the Counterclaims**

Defendant/Counter-Plaintiff Crystal Lagoons U.S. Corp. ("Crystal Lagoons") submits this response to the Motion to Dismiss Count II of Crystal Lagoons' Counterclaims (Dkt. 15, the "Motion") filed by Plaintiffs/Counter-Defendants Megatel Homes, LLC ("Megatel") and Zach Ipour, and would respectfully show as follows:

## I. INTRODUCTION

Texas's common law misappropriation cause of action exists to protect the labor expended to create something of value. Crystal Lagoons pleaded sufficient facts to support this claim as Count II of its Counterclaims by alleging that Plaintiffs have caused damages to Crystal Lagoons by exploiting Crystal Lagoons' labor, which created first-of-its-kind technology for large in-land, man-made swimming lagoons with crystal clear water. Plaintiffs seek to avoid responsibility for their actions by confining common law misappropriation to only "two types" of circumstances, which they say do not apply here. (Dkt. 15 at 1, 4.) But Plaintiffs' position is inconsistent with the Fifth Circuit's interpretation of Texas law. Plaintiffs engaged in unfair and dishonest business practices at Crystal Lagoons' expense, and the common law misappropriation cause of action exists to remedy precisely this type of misconduct. The Court should deny the Motion.

## II. RELEVANT ALLEGATIONS

Crystal Lagoons alleged sufficient facts to support its common law misappropriation claim. Among other things, Crystal Lagoons (i) describes the substantial time, labor, skill, and money that it invested to create the innovative technology for its lagoon amenities; (ii) provides examples of Plaintiffs' unauthorized use of Crystal Lagoons' name, trademarks, and technology for Plaintiffs' own benefit; and (iii) alleges that Crystal Lagoons has incurred and will continue to incur damages because of Plaintiffs' actions.

For starters, Crystal Lagoons expended significant time and resources to develop the innovative technology that allows for multi-acre swimming lagoons with turquoise-clear, high-quality water at reasonable costs. (Dkt. 10 ¶¶ 1, 53.) Crystal Lagoons' founder—biochemist and real-estate developer Fernando Fischmann—created something that did not exist before: He spent countless hours over multiple years to develop this technology, which has been recognized with numerous awards and records and which has received many patents. (*Id.* ¶¶ 12-16.) On information and belief, all multi-acre, man-made lagoons with sustained, clean, high-clarity water in the United States have been built, operated, and/or maintained with Crystal Lagoons' technology. (*Id.* ¶ 17.)

Crystal Lagoons' extensive efforts have led to a reputation for excellence and allowed real-estate developers to create projects where residents can access and experience beach life near their homes. (*Id.* ¶¶ 17-18.) Without Crystal Lagoons' revolutionary work, residents of inland-city developments would not have proximate access to a beach setting or activities like kayaking, sailing, rowing, and windsurfing. (*See id.* ¶¶ 1, 15, 18.) Now, they do. (*Id.* ¶ 18.)

Megatel is a real-estate developer that has benefitted from using Crystal Lagoons' name, trademarks, and images of Crystal Lagoons' amenities. (*Id.* ¶¶ 2, 4, 43.) Plaintiffs contacted Crystal Lagoons to explore incorporating a lagoon amenity using Crystal Lagoons' technology into

one of their Dallas-area real-estate developments. (*Id.* ¶¶ 2, 21.) After discussions, Plaintiffs indicated interest in using Crystal Lagoons' technology for as many as twenty projects. (*Id.* ¶ 24.) But negotiations between Plaintiffs and Crystal Lagoons stalled. (*Id.* ¶ 29.)

Nevertheless, without Crystal Lagoons' consent, Plaintiffs used Crystal Lagoons' name and trademarks to secure approval of real-estate developments that promote access to lagoon amenities. (*Id.* ¶¶ 31, 36-42.) Plaintiffs also took officials from the City of Forney, Texas, to tour Crystal Lagoons amenities near Tampa, Florida and Houston, Texas. (*Id.* ¶ 37.) These tours that featured Crystal Lagoons' technology in connection with Plaintiffs' planned developments fostered confusion about Crystal Lagoons' involvement in, support for, and sponsorship of Plaintiffs' projects. (*Id.* ¶¶ 39, 43, 45-46.) On information and belief, which Crystal Lagoons intends to substantiate in discovery, local governments' interest in and support for Plaintiffs' developments with lagoon amenities arose from the goodwill associated with Crystal Lagoons' reputation and Crystal Lagoons' unique technology. (*Id.*) Crystal Lagoons also alleges and believes discovery will show Plaintiffs misused Crystal Lagoons' confidential information and intellectual property to formulate and further their own plans for competing lagoon-like amenities. (*Id.* ¶ 30.)

Plaintiffs are free riding on Crystal Lagoons' labor by marketing "lagoon communities" that promise access to amenities like those using Crystal Lagoons' proprietary technology, and which were approved by city officials who were misled by Plaintiffs' use of Crystal Lagoons' name, trademarks, and images and videos of Crystal Lagoons' amenities. (*Id.* ¶¶ 43-44.) Plaintiffs are benefitting from their unfair and dishonest conduct, including by avoiding the expenses Crystal Lagoons incurred to create and establish its technology, brand, and trademarks. (*Id.* ¶ 56.) This, in turn, is causing Crystal Lagoons to incur damages. (*Id.* ¶¶ 30, 46, 57.)

## III. LEGAL STANDARDS

To decide Plaintiffs' Motion under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates Crystal Lagoons' claim by "accepting all well-pleaded facts as true, viewing them in the light most favorable to [Crystal Lagoons]." *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up). Crystal Lagoons' allegations are sufficient if they allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

Crystal Lagoons alleged facts that support a reasonable inference Plaintiffs are free riding on the product of Crystal Lagoons' labor and causing damages to Crystal Lagoons. This is sufficient to state a claim for common law misappropriation under Texas law.

**A. The common law misappropriation cause of action provides broad protection against dishonest practices that devalue labor expended to create new technologies.**

"Courts have applied common law misappropriation when they sensed that one party dealt unfairly with another and the three statutory systems protecting intellectual property—copyright, patent, and trademark/deception as to origin—did not protect the subject matter." *Grupo Bryndis, Inc. v. Hinojosa*, No. SA-10-CV-329, 2011 WL 13234911, at *4 (W.D. Tex. Feb. 28, 2011) (internal quotation omitted). Misappropriation is a form of unfair competition, and "the prevailing view . . . 'is that the law of unfair competition is the umbrella for all causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-CV-2390, 2010 WL 11464037, at *2 (N.D. Tex. Oct.

4, 2010) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied)) (cleaned up).

The elements for common law misappropriation are "(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004) (internal quotation omitted). The Fifth Circuit has determined that common law misappropriation in Texas "is specially designed to protect the *labor*—the so-called 'sweat equity'—that goes into creating a work." *Id.* (internal quotation omitted). This cause of action thus serves to remedy conduct that devalues or free rides on the labor of another.[1]

Despite these principles and the broad scope of common law misappropriation in Texas, Plaintiffs characterize this theory as confined to only two categories, relying on *Jim S. Adler P.C. v. Angel L. Reyes & Associates PC*, No. 3:19-CV-2027, 2020 WL 5099596, at *12–13 (N.D. Tex. Aug. 7, 2020). (Dkt. 15 at 1, 4.) But the formulations discussed in *Adler* merely tracked the pleadings in that case, not rigid restrictions under Texas law. *See* 2020 WL 5099596, at *12. Plaintiffs also narrowly define a "product" that could be subject to common law misappropriation by cherry-picking examples from the cited caselaw. (*See, e.g.*, Dkt. 15 at 8.) In doing so, however, Plaintiffs

---

[1] Unfair competition law in Texas traces its roots to *International News Service v. Associated Press*, in which the U.S. Supreme Court held that "where the question is one of unfair competition, if that which complainant has acquired fairly at substantial cost may be sold fairly at substantial profit, a competitor who is misappropriating it for the purpose of disposing of it to his own profit and to the disadvantage of complainant cannot be heard to say that it is too fugitive or evanescent to be regarded as property. It has all the attributes of property necessary for determining that a misappropriation of it by a competitor is unfair competition because contrary to good conscience." 248 U.S. 215, 240 (1918); *see Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 n.59 (5th Cir. 1999).

blow past the Fifth Circuit's recognition in *Dresser-Rand* (based on expert testimony in the case) that "the essence of a product" was "in the work, in the contribution of [an inventor]." *Id.* at 839.

Here, the work that Crystal Lagoons expended to develop the innovative technology for its lagoon amenities fits squarely within the protection that the common law misappropriation cause of action is meant to provide. *See id.* And Crystal Lagoons adequately pleaded Plaintiffs' misuse of Crystal Lagoons' work (i.e., the "product") by alleging Plaintiffs' unauthorized use of Crystal Lagoons' name, trademarks, and images of Crystal Lagoons' amenities to market and secure government approvals for real-estate developments that will include recreational lagoons with no affiliation to Crystal Lagoons.

### B.  Crystal Lagoons sufficiently pleaded common law misappropriation.

Plaintiffs' Motion should be denied just like the motion to dismiss in *Grupo Bryndis*, in which the court held that plaintiffs sufficiently stated a claim for common law misappropriation by alleging that "they have 'devoted over 25 years of labor, skill and money in establishing an image and sound,' the defendants have 'misappropriated the name, image, and likeness of Plaintiffs . . . for their own commercial use and monetary gain,' and the plaintiffs incurred irreparable injury." *See* 2011 WL 13234911, at *4. Crystal Lagoons has alleged analogous facts here that support each element of common law misappropriation.

#### 1.  Crystal Lagoons invested substantial time, effort, skill, and money to develop its pioneering technology.

Crystal Lagoons' innovative work introduced man-made lagoons with turquoise-clear, high-quality water as a feasible option for real-estate developments. (Dkt. 10 ¶¶ 1, 18, 53.) Crystal Lagoons' founder developed this technology over several years, and his groundbreaking work has been widely recognized. (*Id.* ¶¶ 12-16.) On information and belief, no one else has developed or

implemented comparable technology that sustains similar lagoon amenities. (*Id.* ¶ 17.) Crystal Lagoons has adequately pleaded the first element for common law misappropriation. *See, e.g.*, *Grupo Bryndis*, 2011 WL 13234911, at *4.

> **2. Plaintiffs are free riding on Crystal Lagoons' labor and reputation by improperly using Crystal Lagoons' name, trademarks, and images of its amenities in connection with Plaintiffs' planned lagoon-like projects.**

Common law misappropriation protects the fruits of a claimant's laborious efforts from being misappropriated by others. *See Dresser-Rand*, 361 F.3d at 839-40. Here, Plaintiffs have misappropriated Crystal Lagoons' labor and gained a special commercial advantage for their real-estate developments based on representations and suggestions that water features at their developments will incorporate Crystal Lagoons' renowned and trusted technology.

Crystal Lagoons has alleged that its labor created a product capable of being misappropriated. As a result of Crystal Lagoons' innovations, real-estate developers can now incorporate lagoon amenities for in-land projects and have done so successfully, thus giving residents proximate access to beach activities that would not otherwise be available. (*See* Dkt. 10 ¶¶ 1, 15, 17-18.) Plaintiffs invoked Crystal Lagoons' name, trademarks, and images of Crystal Lagoons' amenities to promote and secure government approval for their developments that were held out as incorporating "lagoons," but which will not include one of Crystal Lagoons' proprietary amenities—even though, on information and belief, Plaintiffs' planned water features will use Crystal Lagoons' technology without authorization. (Dkt. 10 ¶¶ 30-31, 36-42, 55.) This is sufficient to support a common law misappropriation claim. As Plaintiffs concede, courts have "allowed misappropriation claims to go forward" when they involve "(1) the sale of some product by the defendant, in competition with the plaintiff, and (2) the misappropriation of some additional 'thing' not protected by trademark law or some other confidential relationship." (Dkt. 15 at 8; *see*

*id.* at 6 (acknowledging that "[m]isappropriation is a state common law offshoot of the general law of unfair competition and invoked when the plaintiff creates a valuable '*thing*' that defendant has 'appropriated' at little cost." (emphasis added)).)

Crystal Lagoons also alleged that Plaintiffs engaged in the type of misconduct contemplated by the common law misappropriation cause of action. The viability of Crystal Lagoons' claim does not hinge on alleging that Plaintiffs sold an individual tangible unit of something. (*See id.*) Indeed, "inappropriate uses" to support a common law misappropriation claim include more than just selling a final product and encompass other activities like marketing. *See Dresser-Rand*, 361 F.3d at 840; *see also ForScan Corp. v. Dresser Indus., Inc.*, 789 S.W.2d 389, 395 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Here, Plaintiffs marketed—and continue to market—their "lagoon" developments after using Crystal Lagoons' name and showing Crystal Lagoons' amenities as exemplars. (Dkt. 10 ¶¶ 31, 36, 44.) In doing so, they are reaping benefits from Crystal Lagoons' pioneering work without ever having developed such an amenity, let alone putting in the years of painstaking labor and significant financial investments that Crystal Lagoons undertook to create the technology. (*See id.* ¶¶ 31, 36-43.)

The significance of Plaintiffs' misuse is heightened by Crystal Lagoons' unique position in the market for lagoon amenities. Unlike law firms competing for clients that many different lawyers could represent, *see Adler*, 2020 WL 5099596, at *1-2, Crystal Lagoons and Plaintiffs are not on equal footing. Crystal Lagoons stands alone in its ability to provide technology that supports multi-acre, man-made lagoons with sustained, clean, high-clarity water in the United States. (*See* Dkt. 10 ¶ 17.) Neither Plaintiffs nor any other party are known to have developed comparable technology that is as safe, effective, and reliable. (*See id.*) By invoking Crystal Lagoons' name, trademarks, and

amenities in connection with their developments, Plaintiffs bypassed the scrutiny that would have otherwise been applied to their attempts to replicate Crystal Lagoons' unique technology. (*See id.* ¶ 17, 43.)

Plaintiffs continue to free ride on their unauthorized use of Crystal Lagoons' name, trademarks, and images of Crystal Lagoons' amenities, and they refuse to correct the confusion they have created. (*Id.* ¶¶ 30-31, 43-45.) These allegations are sufficient to support the second element for Crystal Lagoons' claim. *See, e.g.*, *Grupo Bryndis*, 2011 WL 13234911, at *4.

### 3. Crystal Lagoons is incurring commercial damages due to Plaintiffs' actions.

Crystal Lagoons' allegations are also sufficient as to the third element of common law misappropriation: damages. Plaintiffs' conduct has created confusion among and caused interference with Crystal Lagoons' existing and prospective clients, which has in turn caused Crystal Lagoons to incur monetary damages. (*Id.* ¶¶ 46, 57.) Crystal Lagoons is also at commercial disadvantage relative to Plaintiffs because Plaintiffs are attempting to establish themselves as Crystal Lagoons' competitors while unfairly avoiding the labor and monetary investments necessary to develop the kind of innovative technology that is necessary to support large, man-made lagoons with turquoise-clear, high-quality water at low costs. (*Id.* ¶¶ 1, 30, 43, 54-57.)

### V.  CONCLUSION

For the reasons above, Crystal Lagoons respectfully requests that the Court deny Plaintiffs' Motion. In the alternative, to the extent the Court finds any deficiencies in the pleading of Count II in the Counterclaims, Crystal Lagoons requests leave to address any such deficiency in an amended pleading. Since filing the Counterclaims, Crystal Lagoons has discovered additional information that is relevant to and further supports the common law misappropriation claim, which Crystal Lagoons could add to its allegations. By way of example, this information includes architectural

drawings (obtained through Public Information Act requests) for a planned "lagoon" at one of Megatel's developments that has design features imitating specific aspects of Crystal Lagoons' proprietary amenities. These drawings show that Plaintiffs—in conjunction with third parties, such as Cloward H2O LLC—intend to use distinctive features of Crystal Lagoons' amenities, which have been developed and refined over years, to compete with Crystal Lagoons and gain a special advantage by having government officials and the public associate Megatel's project with the proven success of Crystal Lagoons' amenities in other projects.

Finally, Crystal Lagoons requests all other relief to which it may be entitled.

Dated: December 21, 2022

Respectfully submitted,

/s/ Richard D. Anigian
Richard D. Anigian
  *Lead Attorney*
  Texas Bar No. 01264700
  richard.anigian@haynesboone.com
Jason N. Jordan
  Texas Bar No. 24078760
  jason.jordan@haynesboone.com
J. Wilson Miller
  Texas Bar No. 24125326
  wilson.miller@haynesboone.com
HAYNES BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 214-651-5000
Fax: 214-651-5940

**ATTORNEYS FOR DEFENDANT CRYSTAL LAGOONS U.S. CORP.**

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant hereby certifies that on December 21, 2022, a true and correct copy of the above and foregoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Richard D. Anigian*
Richard D. Anigian